UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
QUANTA SPECIALTY LINES INSURANCE
COMPANY,

                          Plaintiff,

-against-

INVESTORS CAPITAL CORPORATION,

                          Defendant,
----------------------------------------------------------------x

Civil Action No.

**COMPLAINT FOR**
**DECLARATORY JUDGMENT**

**06 CIV. 4624**

**JUDGE LEISURE**

FILED JUN 15 2006 USDC WP SDNY

Plaintiff QUANTA SPECIALTY LINES INSURANCE COMPANY, by and through its counsel, Traub Eglin Lieberman Straus LLP, for its complaint for declaratory judgment against Defendant INVESTORS CAPITAL CORPORATION, states as follows:

**PARTIES**

1.     Plaintiff Quanta Specialty Lines Insurance Company ("Quanta") is incorporated pursuant to the laws of Indiana and maintains its principal place of business at 10 Rockefeller Plaza, New York, New York.

2.     Defendant Investors Capital Corporation ("ICC") is incorporated pursuant to the laws of Massachusetts and maintains its principal place of business at 230 Broadway, Lynnfield, Massachusetts.

**JURISDICTION AND VENUE**

3.     This Court has jurisdiction in this action pursuant to 28 U.S.C. § 1332(a)(1) because the parties are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest, costs and attorneys' fees. In addition, this Court has jurisdiction because this is an action for declaratory judgment pursuant to 28 U.S.C. §§ 2201-02.

4. Venue is proper in this federal district court pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events giving rise to this action occurred in this judicial district and the insurance policy that is the subject of the instant action was issued and intended to be performed from this judicial district.

## GENERAL ALLEGATIONS

### A. The Policy

5. Quanta issued to ICC broker/dealer and registered representatives professional liability insurance pursuant to policy number SBD 1000450 05, having a Policy Period of December 31, 2004 to December 31, 2005 (hereinafter the "Policy"). A copy of the Policy is annexed hereto as Exhibit "A."

6. Insureds under the Policy include an "Insured Broker/Dealer." ICC is designated as an Insured Broker/Dealer on the Policy's Declarations.

7. Endorsement No. 10 to the Policy states that the Insured Broker/Dealer Limit of Liability Each Claim/Aggregate applicable to Claims involving "Selling Away" is $1,000,000, inclusive of Damages and Defense Expenses. This endorsement further provides that an Insured Broker/Dealer Retention of $100,000 applies to Claims involving Selling Away, inclusive of Damages and Defense Expenses, as well as co-insurance of 25% of Damages. Endorsement No. 10 defines the phrase "Selling Away" as "the sale, attempted sale or servicing of products that are not approved and authorized by the Insured Broker/Dealer."

### B. The Green Arbitration

8. By way of correspondence from its broker dated August 15, 2005, ICC provided notice to Quanta under the Policy that it was served with a Statement of Claim in an National

Association of Securities Dealers, Inc. ("NASD") arbitration, entitled *Lillie H. Green, Ruth C. Boone, Mary L. Hines and Linda S. Eley v. Investors Capital Corporation, Northeast Securities, Inc., Joseph Lionel Jones and Joe Jones & Associates* (hereinafter the "*Green* Arbitration"). A copy of the Statement of Claim filed in the *Green* Arbitration is annexed hereto as Exhibit "B."

9. The Statement of Claim filed in the *Green* Arbitration alleges that Joseph Jones, who was an ICC registered representative, sold the claimants securities issued by BAB Productions ("BAB"), after making promises concerning significant earnings on same. The Statement of Claim further asserts that, "unbeknownst to claimants, Jones was operating a Ponzi Scheme which has now been shut down by the State of North Carolina." Moreover, Jones was allegedly "engaged in the practice of 'selling away' investment contracts issued by BAB . . . which were not registered securities." As a result, the claimants allegedly lost funds that they invested in BAB.

10. Jones was affiliated with ICC as a registered representative from April 28, 1998 to December 31, 2001. ICC did not approve or authorize his sale of BAB securities.

11. The Statement of Claim filed in the *Green* arbitration alleges, *inter alia*, that ICC failed to supervise Jones, which resulted in his sale of unregistered and inappropriate securities to certain claimants. The Statement of Claim asserts other counts against ICC sounding in breach of fiduciary duty, *respondeat superior*, suitability, negligent misrepresentation, violations of the North Carolina Securities Act, breach of contract and fraud. The Statement of Claim seeks an award of "compensatory damages of up to $1,000,000, including lost profits if [claimants'] monies had been prudently invested, pre-judgment interest, post-judgment interest, attorneys' fees, punitive damages, a return of all fees, management charges and commissions, plus interest, and costs."

12. ICC requested defense and indemnity coverage for the *Green* Arbitration from Quanta under the Policy. In response, letters where sent to ICC on behalf of Quanta which reserved its rights to deny coverage for the *Green* Arbitration based on various terms, provisions and exclusions contained in the Policy. Copies of Quanta's reservation of rights letters are annexed hereto as Exhibit "C."

13. ICC also requested that its defense of the *Green* Arbitration be undertaken by counsel that it selected. Quanta agreed to ICC's request for representation by its own counsel, subject to a full reservation of rights.

14. Since August 2005, various motions to amend the Statement of Claim were filed by the claimants in the *Green* Arbitration. The most recent Fourth Amended Statement of Claim names thirty seven claimants. The Fourth Amended Statement of Claim asserts essentially the same allegations as the original Statement of Claim – that the claimants purchased unregistered and inappropriate BAB securities from Jones, and that ICC failed to supervise his conduct, which resulted in losses of funds invested in BAB. Copies of the claimants' motion for leave to file an amended pleading and Fourth Amended Statement of Claim are annexed hereto as Exhibit "D."

15. The Fourth Amended Statement of Claim filed in the *Green* Arbitration asserts the same counts and prayers for relief as the original Statement of Claim, except that it seeks $5,000,000 in compensatory damages.

C. **The Marshall Arbitration**

16. By way of correspondence from its broker dated April 16, 2006, ICC provided Quanta with notice under the Policy that it was served with a Statement of Claim filed in an NASD arbitration, entitled *MacArthur Mitchell, Zoe Taylor Mitchell, Maxine Hobbs, Wallace Lucas, and*

4

*Dawn Phillips Lucas v. Joseph L. Jones, Investors Capital Corp., Northeast Securities, Inc. and W.H. Colson Securities, Inc.* (hereinafter the "*Mitchell* Arbitration"). A copy of the Statement of Claim filed in the *Mitchell* Arbitration is annexed hereto as Exhibit "E."

17. The Statement of Claim filed in the *Mitchell* Arbitration alleges that Jones, who was a registered representative of ICC, sold the claimants "fraudulent investments in an enterprise known as BAB . . . to hundreds of mostly-minority investors." The Statement of Claim also asserts, *inter alia*, that ICC "failed to properly supervise . . . Jones," which resulted in losses exceeding $100,000.

18. The Statement of Claim filed in the *Mitchell* Arbitration asserts counts sounding in breach of contract, common law fraud, breach of fiduciary duty, negligence, gross negligence and violation of the anti-fraud provisions of the North Carolina Securities Act. The Statement of Claim seeks compensatory damages, interest, costs and attorneys' fees.

19. ICC requested defense and indemnity coverage from Quanta under the Policy for the *Mitchell* Arbitration.

### D. Revelation of Prior Investigation and Claim

20. ICC recently disclosed to Quanta that, prior to the December 31, 2004 inception date of the Policy, it was contacted by the State of North Carolina, Department of the Secretary of State, Securities Division ("Securities Division") as part of an investigation into the activities of Jones. Specifically, the Securities Division forwarded correspondence to ICC dated June 9, 2004, which requested documents concerning Jones, his clients, outside business activities, prior complaints and ICC's supervision procedures. The Securities Division also requested "copies of any and all records concerning account # 6BB-116101, including monthly statements." A copy of the June 9, 2004 letter from Securities Division to ICC is annexed hereto as Exhibit "F."

21. ICC responded to the Securities Division's request for documents as part of its investigation into Jones by way of correspondence dated June 14, 2004. In addition to providing the documents and information requested, ICC advised the Securities Division that account # 6BB-11601 was opened by Patti Whitehead, who is now a claimant in the *Green* Arbitration by way of the Fourth Amended Statement of Claim. A copy of the June 14, 2004 letter from ICC to the Securities Division is annexed hereto as Exhibit "G."

22. The Securities Division's investigation culminated in the issuance of a cease and desist order dated September 13, 2004, which restrained Jones from "offering for sale, soliciting offers to purchase, or selling, to the public in North Carolina, the securities of BAB . . . or any security of any issuer." A copy of the Securities Division's cease and desist order is annexed hereto as Exhibit "H."

23. ICC recently disclosed to Quanta that, prior to December 31, 2004 inception date of the Policy, a client of Jones made a Claim against ICC in connection with the purchase of BAB securities. Specifically, on October 21, 2004, counsel for Patricia Alston forwarded correspondence to ICC, which stated that "she invested over $100,000 with BAB . . . in late 1999 and early 2000," through Jones. Counsel also advised that Jones was under the supervision of ICC when he "fraudulently sold these unregistered securities to Ms. Alston." Moreover, counsel referenced and enclosed with his letter a copy of the Securities Divisions' September 13, 2004 cease and desist order, which "clearly states that BAB [investments] are not registered securities, that sales can only be made by registered dealers and that false statements of material facts were involved." A copy of the October 21, 2004 letter from Alston's counsel is annexed hereto as Exhibit "I."

24. Alston's counsel concluded his October 21, 2004 letter to ICC as follows: "Since Joseph Jones sold these securities to our client Ms. Alston while Mr. Jones was affiliated with your corporation you are responsible for his securities violations. Upon receipt of this letter please contact our client to make arrangements to reimburse her for her investments [in] BAB . . . made through your firm."

### E.   Dispute Between Quanta and ICC

25. An actual and justiciable controversy is presented by the instant action because ICC seeks defense and indemnity coverage under the Policy for the *Green* and *Mitchell* Arbitrations, while Quanta maintains, in light of the claimants' pleadings and revelation of the prior investigation and Claim, that coverage is not afforded for the *Green* and *Mitchell* Arbitrations, as well as any future Claims against ICC arising from Jones' sale of BAB securities, pursuant to the terms, provisions and exclusions of the Policy.

## COUNT I
### (Insuring Agreements, Section 6 and Related Definitions)

26. Quanta repeats and reasserts the allegations contained in paragraphs 1 through 25 of this complaint as if fully set forth herein.

27. The Policy's Insuring Agreements state, in relevant part, as follows:

> The Insurer shall pay, on behalf of an Insured, Damages which the Insured becomes legally obligated to pay because of a Claim that is both made against the Insured and reported to the Insurer in writing during the Policy Period or Discovery Period, if applicable for a Wrongful Act committed solely in the rendering or failing to render Professional Services for a Client, . . . .

28. Section 6 of the Policy ("Single Claim/Interrelated Wrongful Acts") states as follows:

> All Claims based upon or arising out of the same Wrongful Act or Interrelated Wrongful Acts shall be considered a single Claim and each such single Claim shall be deemed to have been made on the earlier of the following:
>
> A.    when the earliest Claim arising out of such Wrongful Act or Interrelated Wrongful Acts was first made; or
>
> B.    when notice was provided to the Insurer pursuant to Section 12 herein concerning a Wrongful Act giving rise to such Claim.

29.    The Policy defines the term "Claim" as follows:

> Claim means a demand received by an Insured for Damages (including pleadings received in civil litigation or arbitration) for an actual or alleged Wrongful Act. A Claim does not include the following:
>
> 1.    a demand for declaratory, injunctive or other non-monetary relief;
> 2.    any form of criminal proceeding;
> 3.    any proceeding commenced by a governmental or quasi-governmental official or agency or any self-regulatory official or agency except if the agency or official is a Client of the Insured in connection with the rendering of Professional Services.

30.    The policy defines the phrase "Wrongful Act" as follows:

> Wrongful Act means a negligent act or omission, including a Personal Injury Act, committed by an Insured in the rendering of Professional Services.

31.    The policy defines the phrase "Interrelated Wrongful Acts" as follows:

> Interrelated Wrongful Acts means any Wrongful Acts that are:
>
> 1.    similar, repeated or continuous; or
> 2.    connected by reason of any common fact, circumstance, situation, transaction, casualty, event, decision or policy or one or more series of facts, circumstances, situations, transactions, casualties, events decisions or policies.

32. Claims must be "first made against the Insured and reported to the Insurer in writing during the Policy Period," which was December 31, 2004 to December 31, 2005.

33. On October 21, 2004, before the inception of the Policy Period, Patricia Alston made a "Claim" against ICC, within the meaning of the Policy.

34. In her Claim, Alston alleged that ICC failed to supervised Jones, which resulted in his sale of unregistered and inappropriate BAB securities to her. The same allegations are asserted against ICC in the *Green* and *Mitchell* Arbitrations. Therefore, the Alston Claim and *Green* and *Mitchell* Arbitrations are based upon or arising out of the same "Wrongful Act" or "Interrelated Wrongful Acts," within the meaning of those phrases as used in the Policy.

35. Pursuant to Section 6 of the policy, the Alston Claim and the *Green* and *Mitchell* Arbitrations are considered a single Claim deemed made when the earliest Claim arising out of such Wrongful Act or Interrelated Wrongful Acts was first made, that being the Alston Claim on October 21, 2004, which was before the December 31, 2004 to December 31, 2005 Policy Period. Therefore, such single Claim is not covered by the Policy.

**WHEREFORE**, Quanta respectfully requests that this Court enter an order declaring that coverage is not afforded for the *Green* and *Mitchell* Arbitrations, as well as any future Claims against ICC arising from Jones' sale of BAB securities, pursuant to the Policy's Insuring Agreements, Section 6 and definitions of Claim, Wrongful Act and Interrelated Wrongful Acts.

## COUNT II
### (Insuring Agreements Section 2)

36. Quanta repeats and reasserts the allegations contained in paragraphs 1 through 35 of this complaint as if fully set forth herein.

37. The Policy's Insuring Agreements state, in relevant part, as follows:

> The Insurer shall pay, on behalf of an Insured, Damages which the Insured becomes legally obligated to pay because of a Claim that is both made against the Insured and reported to the Insurer in writing during the Policy Period or Discovery Period, if applicable for a Wrongful Act committed solely in the rendering or failing to render Professional Services for a Client, provided:
>
> * * *
>
> 2. As of the inception date of this Policy as stated in Item 3 of the Declarations, no Insured had knowledge or reasonable basis upon which to anticipate that the Wrongful Act or any Interrelated Wrongful Act could result in a Claim.

38. On June 9, 2004, prior to the December 31, 2004 inception date of the Policy, ICC was contacted by the Securities Division with regard to an investigation of Jones, and ICC's supervision of him. The Securities Divisions' investigation included an inquiry into the ICC accounts of Patti Whitehead, who is a claimant in the *Green* Arbitration. The Securities Division's investigation resulted in the issuance of a cease and desist order directed at Jones on September 13, 2004.

39. On October 21, 2004, Patricia Alston made a Claim against ICC, with regard to Jones' sale of BAB securities, and ICC's supervision of his activities. The September 13, 2004 cease and desist order issued following the Securities Division's investigation was expressly referenced in the Alston Claim.

40. Less than 90 days prior to the December 31, 2004 inception date of the Policy, ICC knew that the Securities Division issued a cease and desist order prohibiting Jones from further sales of unregistered BAB securities. By virtue of direct contacts with the Securities Division in June 2004, ICC knew that the Securities Division was investigating Jones' conduct with regard to certain

clients of ICC. Therefore, ICC has every reason to anticipate that one or more of its clients had sustained losses as a result of the sale of unregistered BAB securities by Jones, and that Claims could be made against ICC based thereon. In fact, prior to the December 31, 2004 inception date of the Policy, at least one client of ICC, Patricia Alston, made exactly such a Claim. As such, prior to the inception date of the Policy, ICC had knowledge or a reasonable basis upon which to anticipate that the Wrongful Act or Interrelated Wrongful Acts at issue in the *Green* and *Mitchell* Arbitrations could result in a Claim. Coverage is, therefore, not afforded for the *Green* and *Mitchell* Arbitrations pursuant to Section 2 of the Policy's Insuring Agreements.

**WHEREFORE**, Quanta respectfully requests that this Court enter an order declaring that coverage is not afforded for the *Green* and *Mitchell* Arbitrations, as well as any future Claims against ICC arising from Jones' sale of BAB securities, pursuant to Section 2 of the Policy's Insuring Agreements.

**COUNT III**
**(Exclusion D.3.)**

41. Quanta repeats and reasserts the allegations contained in paragraphs 1 through 40 of this complaint as if fully set forth herein.

42. Exclusion D.3. contained in the Policy states as follows:

> This Policy shall not apply to and the Insurer shall pay neither Damages nor Defense Expenses for any Claim:
>
> * * *
>
> D.    arising out of, based upon or in consequence of, directly or indirectly resulting from or in anyway involving:
>
> 3.    a.    any Claim, demand, suit, proceeding or investigation of which any Insured had notice, pending on or prior

       to the inception date of the Policy Period in Item 3 of the Declarations; or

  b. any fact, matter, circumstance, situation, transaction or event underlying or alleged in such demand, suit, proceeding, claim or investigation;

regardless of the legal theory upon which such Claim is predicated;

43. The *Green* and *Mitchell* Arbitrations arise out of, are based upon, in consequence of, directly or indirectly result from or involve the Alston Claim and Securities Division's investigation of which ICC had notice, pending or prior to Policy's December 31, 2004 to December 31, 2005 Policy Period; or the facts, matters, circumstances, situations, transactions or events underlying or alleged in the Alston Claim and Securities Division's investigation. Therefore, Exclusion D.3. negates coverage under the Policy for the *Green* and *Mitchell* Arbitrations.

**WHEREFORE**, Quanta respectfully requests that this Court enter an order declaring that coverage is not afforded for the *Green* and *Mitchell* Arbitrations, as well as any future Claims against ICC arising from Jones' sale of BAB securities, pursuant to Exclusion D.3. contained in the Policy.

## COUNT IV
### (Definition of Damages)

44. Quanta repeats and reasserts the allegations contained in paragraphs 1 through 43 of this complaint as if fully set forth herein.

45. The Statements of Claims filed in the *Green* and *Mitchell* Arbitrations seek, *inter alia*, punitive or exemplary damages, the return, restitution or refund of commissions, fees or charges and/or other matters which are deemed uninsurable under the law, which do not represent "Damages," within the meaning of the Policy.

**WHEREFORE**, Quanta respectfully requests that this Court enter an order declaring that coverage is not afforded for any awards of punitive or exemplary damages, the return, restitution or refund of commissions, fees or charges and/or other matters which are deemed uninsurable under the law which may be rendered against ICC in the *Green* and *Mitchell* Arbitrations, pursuant to the policy's Insuring Agreements and definition of Damages.

## COUNT V
### (Definition of Wrongful Act)

46. Quanta repeats and reasserts the allegations contained in paragraphs 1 through 45 of this complaint as if fully set forth herein.

47. The Statements of Claim filed in the *Green* and *Mitchell* Arbitrations assert allegations and counts based on fraud, which does not represent a "Wrongful Act," within the meaning of the Policy. Therefore, any Damages awarded against ICC based on fraud allegations and counts are not covered by the Policy.

**WHEREFORE**, Quanta respectfully requests that this Court enter an order declaring that coverage is not afforded for any awards that may be entered against ICC in the *Green* and *Mitchell* Arbitrations based on fraud allegations and counts, pursuant to the Policy's Insuring Agreements and Definition of Wrongful Act.

## COUNT VI
### (Exclusion B.2.)

48. Quanta repeats and reasserts the allegations contained in paragraphs 1 through 47 of this complaint as if fully set forth herein.

49. Several of the Claims joined in the *Green* and *Mitchell* Arbitrations were made by parties who were not "Clients" of ICC, within the meaning of that term as used in the Policy.

Therefore, Exclusion B.2., which applies to Claims by or on behalf of any individual, company or entity that is not a Client of the Insureds, negates coverage under the Policy for any such Claims.

**WHEREFORE**, Quanta respectfully requests that this Court enter an order declaring that coverage is not afforded for any Claims brought in the *Green* and *Mitchell* Arbitrations against ICC by parties who were not its Clients, pursuant to Exclusion B.2. contained in the Policy.

### COUNT VII
### (Exclusion D.4.)

50. Quanta repeats and reasserts the allegations contained in paragraphs 1 through 49 of this complaint as if fully set forth herein.

51. The Statements of Claims filed in the *Green* and *Mitchell* Arbitrations assert allegations and counts against ICC which arise out of, are based upon, in consequence of, directly or indirectly result from or involve dishonest, purposeful, malicious or fraudulent acts; and willful violations of state statutes. Therefore, Exclusion D.4, which applies, in relevant part, to Claims arising out of or based upon any actual or alleged dishonest, purposeful, malicious, fraudulent or criminal act or willful violation of any federal, state or local statute, negates coverage under the Policy for such allegations and counts asserted in the Statements of Claim filed in the *Green* and *Mitchell* Arbitrations.

**WHEREFORE**, Quanta respectfully requests that this Court enter an order declaring that coverage is not afforded for any allegations and counts which arise out of, are based upon, in consequence of, directly or indirectly result from or involve dishonest, purposeful, malicious or fraudulent acts; and willful violations of state statutes against ICC in the *Green* and *Mitchell* Arbitrations, pursuant to Exclusion D.4. contained in the Policy.

## COUNT VIII
### (Exclusion D.8.)

52. Quanta repeats and reasserts the allegations contained in paragraphs 1 through 51 of this complaint as if fully set forth herein.

53. The *Green* and *Mitchell* Arbitrations arise out of and are based upon guarantees, promises or warranties as to market values and earnings of securities. Therefore, Exclusion D.8., which applies, in relevant part, to Claims arising out of or based upon any actual or alleged guarantees, promises or warranties as to interest rates, market values, earnings, future values in connection with securities, negates coverage under the Policy for the *Green* and *Mitchell* Arbitrations.

**WHEREFORE**, Quanta respectfully requests that this Court enter an order declaring that coverage is not afforded for the *Green* and *Mitchell* Arbitrations, pursuant to Exclusion D.8. contained in the Policy.

## COUNT IX
### (Exclusion D.10.)

54. Quanta repeats and reasserts the allegations contained in paragraphs 1 through 53 of this complaint as if fully set forth herein.

55. The *Green* and *Mitchell* Arbitrations arise out of and are based upon the sale, advice and planning of financial strategies with respect to securities placed with an organization or entity not authorized or licensed in the state or jurisdiction with authority to regulate such business. Therefore, Exclusion D.10., which applies, in relevant part, to Claims arising out of or based upon any actual or alleged sale, attempted sale, servicing, advice or planning of financial strategies with respect to any form of security placed directly or indirectly with any organization, entity or vehicle

of any kind, nature or structure which is not licensed or authorized to do business in the state or jurisdiction with authority to regulate such business, negates coverage under the Policy for the *Green* and *Mitchell* Arbitrations.

**WHEREFORE,** Quanta respectfully requests that this Court enter an order declaring that coverage is not afforded for the *Green* and *Mitchell* Arbitrations, pursuant to Exclusion D.10. contained in the Policy.

## COUNT X
### (Exclusion D.13.)

56. Quanta repeats and reasserts the allegations contained in paragraphs 1 through 55 of this complaint as if fully set forth herein.

57. The *Green* and *Mitchell* Arbitrations arise out of and are based upon the inability to pay of a company, entity, vehicle or arrangement in which ICC, through its registered representative, recommended the placement of funds. Therefore, Exclusion D.13., which applies, in relevant part, to Claims arising out or based upon insolvency, receivership, conservatorship, liquidation, bankruptcy or inability to pay of any company, organization, entity, vehicle or arrangement of any nature in which any Insureds placed, recommended to be placed funds, negates coverage under the Policy for the *Green* and *Mitchell* Arbitrations.

**WHEREFORE,** Quanta respectfully requests that this Court enter an order declaring that coverage is not afforded for the *Green* and *Mitchell* Arbitrations, pursuant to Exclusion D.13. contained in the Policy.

**WHEREFORE,** Quanta respectfully requests that this Court enter judgment as follows:

A. On Count I, declaring that coverage is not afforded for the *Green* and *Mitchell* Arbitrations, as well as any future Claims against ICC arising from Jones' sale of BAB securities, pursuant to the Policy's Insuring Agreements, Section 6 and definitions of Claim, Wrongful Act and Interrelated Wrongful Acts;

B. On Count II, declaring that coverage is not afforded for the *Green* and *Mitchell* Arbitrations, as well as any future Claims against ICC arising from Jones' sale of BAB securities, pursuant to Section 2 of the Policy's Insuring Agreements;

C. On Count III, declaring that coverage is not afforded for the *Green* and *Mitchell* Arbitrations, as well as any future Claims against ICC arising from Jones' sale of BAB securities, pursuant to Exclusion D.3. contained in the Policy;

D. On Count IV, declaring that coverage is not afforded for any awards of punitive or exemplary damages, the return, restitution or refund of commissions, fees or charges and/or other matters which are deemed uninsurable under the law which may be rendered against ICC in the *Green* and *Mitchell* Arbitrations, pursuant to the policy's Insuring Agreements and definition of Damages;

E. On Count V, declaring that coverage is not afforded for any awards that may be entered against ICC in the *Green* and *Mitchell* Arbitrations based on fraud allegations and counts, pursuant to the Policy's Insuring Agreements and Definition of Wrongful Act;

F. On Count VI, declaring that coverage is not afforded for any Claims brought in the *Green* and *Mitchell* Arbitrations against ICC by parties who were not its Clients, pursuant to Exclusion B.2. contained in the Policy;

17

G.  On Count VII, declaring that coverage is not afforded for any allegations and counts which arise out of, are based upon, in consequence of, directly or indirectly result from or involve dishonest, purposeful, malicious or fraudulent acts; and willful violations of state statutes against ICC in the *Green* and *Mitchell* Arbitrations, pursuant to Exclusion D.4. contained in the Policy;

H.  On Count VIII, declaring that coverage is not afforded for the *Green* and *Mitchell* Arbitrations, pursuant to Exclusion D.8. contained in the Policy;

I.  On Count IX, declaring that coverage is not afforded for the *Green* and *Mitchell* Arbitrations, pursuant to Exclusion D.10. contained in the Policy;

J.  On Count X, declaring that coverage is not afforded for the *Green* and *Mitchell* Arbitrations, pursuant to Exclusion D.13. contained in the Policy; and

K.  For costs, attorneys' fees and any other further and additional relief that the Court determines is just and proper.

Dated: June 15, 2006
Hawthorne, New York

Respectfully submitted,

By: _____
Lisa L. Shrewsberry (LS 1597)
Richard J. Rogers (RR 6964)

Traub Eglin Lieberman Straus LLP
Mid-Westchester Executive Park
Seven Skyline Drive
Hawthorne, New York 10532
(914) 347-2600 (Telephone)
(914) 347-8898 (Facsimile)

Counsel for Plaintiff QUANTA SPECIALTY LINES INSURANCE COMPANY